**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| General Acrylics, Inc., an Arizona corporation, )<br>)<br>Plaintiff, )<br>)<br>vs. )<br>)<br>Maryland Casualty Company, a Maryland )<br>corporation, *et al.*, )<br>)<br>Defendants. )<br>) | CIV-03-1495-PHX-RGS<br><br>**ORDER** |

Pending before the Court are Defendants' Motion for Summary Judgment (Doc. #33) and Plaintiff's Cross-Motion for Partial Summary Judgment (Doc. #38). After considering the arguments raised by the parties in their briefing and in oral argument, the Court now issues the following ruling.

**BACKGROUND**

This is an insurance coverage dispute. Plaintiff, General Acrylics, Inc., is a contractor that installs tennis courts, basketball courts, and other multi-purpose athletic courts. Defendants are the Assurance Company of America, Zurich American Insurance Company, and Maryland Casualty Company. Plaintiff asserts that Defendants wrongfully denied its claim for insurance coverage after a number of Plaintiff's customers notified it of problems with the structural integrity of the courts.

Plaintiff states that after completing the installation of a number of tennis courts, basketball courts, and/or multi-purpose courts, its customers began notifying it that blistering

1 and delamination was occurring on the surface of the courts.  Plaintiff contends that the
2 blistering and delamination manifested itself as a result of a condition known as Alkali/Silica
3 Reaction ("ASR").

4     ASR is a chemical reaction that occurs between the reactive silica in aggregates to
5 make concrete and the alkalis (sodium and/or potassium) present in the concrete mix and
6 aggregates.  The reaction causes the formation of a gel that absorbs water, swells, and then
7 forces its way through the coating leaving behind residue and holes that then cause further
8 coating degradation and bubbling.  The presence of water can aggravate an ASR problem.
9 The third-party supplier/subcontractor of the concrete for all of the projects at issue was
10 United Metro Materials and San Xavier Rock & Materials, a division of United Metro
11 Materials ("United Metro").

12     Plaintiff sought coverage from Defendants for the costs to repair the courts pursuant
13 to a commercial general liability policy (the "policy").  The policy provided insurance
14 coverage to Plaintiff subject to applicable conditions, limitations, restrictions, and exclusions.
15 Defendants subsequently denied coverage pursuant to the language set forth in the policy.

16     On or about May 14, 2003, Plaintiff filed a lawsuit, Maricopa County Civil Cause No.
17 CV2003-009353, against Defendants alleging breach of the insurance policy and bad faith.
18 Defendants removed the lawsuit to this Court pursuant to 28 U.S.C. §§ 1332 and 1441(a).
19 The parties then filed cross-motions for summary judgment.

20 **DISCUSSION**

21     In their Motion for Summary Judgment, Defendants argue that Plaintiff is seeking
22 coverage under the policy for the costs to repair the blistering and delamination occurring on
23 the courts as a result of faulty workmanship. Defendants claim that pursuant to United States
24 Fidelity & Guaranty Company v. Advance Roofing and Supply Company, 788 P.2d 1227
25 (Ariz. Ct. App. 1989) (hereinafter "Advance Roofing"), such faulty workmanship does not
26 constitute an "occurrence" under the policy and, as such, is not covered.

27     Relying on Advance Roofing, Defendants additionally assert that the costs to repair
28 the damage to the courts due to faulty workmanship do not constitute "property damage" as

- 2 -

1 defined under the policy. Lastly, Defendants contend, in the alternative, that assuming
2 Plaintiff's claim for coverage did constitute "property damage" caused by an "occurrence,"
3 the "your work" exclusion in the policy – defined as "work or operations performed by you
4 or on your behalf" and "materials, parts or equipment furnished in connection with such work
5 or operations" – applies to preclude coverage because the damage claimed was to the
6 insured's own work, rather than the work of a subcontractor, and falls within the "product-
7 completed operations hazard."

8 In its response and Cross-Motion for Partial Summary Judgment, Plaintiff contends
9 that pursuant to a reasonable expectations analysis, the policy at issue unambiguously
10 provides coverage. Specifically, Plaintiff cites to an exception to an exclusion that provides
11 coverage for damage caused to the completed work of the insured if such damage was not
12 intended or expected by the insured and was the result of the defective work of a
13 subcontractor.

14 Alternatively, Plaintiff asserts that, under a reasonable expectations analysis, the
15 policy is ambiguous such that it gives rise to coverage. In support of this contention, Plaintiff
16 states that the policy contains separate coverage for completed work as set forth in the
17 definition of "products-completed operations hazard" located in the definition section of the
18 policy. Plaintiff contends that the lay insured has a reasonable expectation of coverage for
19 any property damage to its completed work and claims that an exception to an exclusion
20 provides coverage to "property damage" included in the "products-completed operations
21 hazard" that must be restored, repaired, or replaced because the insured's work was
22 incorrectly performed on it. Plaintiff argues that if this language does not expressly mandate
23 coverage, it created an ambiguity that must be resolved against Defendants.

26 **A.     "Property Damage" Caused by an "Occurrence"**

27 In order to determine if coverage exists under the policy and, therefore, whether any
28 of the exclusionary provisions apply, the Court must first determine if there was "property

1  damage" caused by an "occurrence." See Advance Roofing, 788 P.2d at 1233. In the instant
2  matter, Plaintiff is seeking coverage under the policy for the costs to repair the blistering and
3  delamination occurring on the courts as a result of the ASR condition in the concrete supplied
4  by United Metro.

5        Provisions of insurance contracts must be construed according to their plain and
6  ordinary meanings, see Sparks v. Republic Nat'l Life Ins. Co., 647 P.2d 1127, 1132 (Ariz.
7  1982), cert. denied, 459 U.S. 1070 (1982), and individual clauses must be read in the context
8  of the policy as a whole "in order to give a reasonable and harmonious meaning and effect
9  to all of its provisions." Federal Ins. Co. v. P.A.T. Homes, Inc., 547 P.2d 1050, 1053 (Ariz.
10 1976), overruled on other grounds by Darner Motor Sales, Inc. v. Universal Underwriters Ins.
11 Co., 682 P.2d 388 (Ariz. 1984). In addition, Arizona courts, in interpreting insurance
12 contracts, employ the reasonable expectations doctrine originally set forth in Darner Motor
13 Sales, Inc., and will refuse to apply even unambiguous insurance contract provisions in
14 certain circumstances. See Gordinier v. Aetna Casualty and Surety Co., 742 P.2d 277 (Ariz.
15 1987).

16       The policy provides coverage for claims brought against the insured for "those sums
17 that the insured becomes legally obligated to pay as damages because of 'bodily injury' or
18 'property damage'" that is caused by an "occurrence." The policy defines an "occurrence"
19 as "an accident, including continuous or repeated exposure to substantially the same general
20 harmful conditions." Further, the policy defines "property damage" as "physical injury to
21 tangible property, including all resulting loss of use of that property" or "loss of use of
22 tangible property that is not physically injured."

23       As previously stated, Defendants rely on Advance Roofing and assert that faulty
24 workmanship does not constitute "property damage" caused by an "occurrence" pursuant to
25 the policy. In Advance Roofing, Advancing Roofing entered into a contract with Villa West
26 IV Homeowners Association ("Villas West") to replace the roofs of 250 units in a housing
27 complex governed by Villas West. See id. at 1228. After all of the work was not performed
28 by Advance Roofing, Villas West filed a complaint alleging, among other things, that

- 4 -

1 Advance Roofing replaced only 40 roofs. See id. at 1229. It was further alleged that the
2 work performed by Advance Roofing was not completed in accordance with the
3 requirements of the contract and was not performed in a good and workmanlike manner. See
4 id. Subsequently, Advance Roofing requested that USF&G defend it against the claims
5 asserted by Villas West. See id. USF&G denied coverage, claiming that it had no obligation
6 to defend or indemnify Advance Roofing concerning the allegations asserted in the
7 complaint. See id. USF&G then filed an action for declaratory judgment to resolve the
8 coverage issue. See id. One of the primary issues before the court was whether there were
9 property damages caused by an occurrence.

10 The court of appeals observed that the claims alleged in the underlying case were
11 essentially claims of faulty workmanship based upon the insured's failure to comply with the
12 requirements of the subject contract, see id. at 1233, and held that "mere faulty workmanship,
13 standing alone, cannot constitute an occurrence as defined in the policy, nor would the cost
14 of repairing the defect constitute property damages." Id.

15 The Court finds that Advance Roofing is distinguishable from the instant matter.
16 Advance Roofing holds that faulty workmanship, by itself, does not constitute property
17 damage caused by an occurrence where the insured's work was not performed in a
18 workmanlike manner. In Advance Roofing, the claimant did not allege or prove property
19 damage and there was no evidence that any damage was caused by the defective work or
20 materials of a subcontractor.

21 To the contrary, this case involves tennis courts, basketball courts, and/or multi-
22 purpose courts that were indisputably damaged due to ASR, an unexpected and unintended
23 reaction of the aggregates in concrete, which was designed, mixed, and manufactured by a
24 third-party subcontractor. Thus, the damages in this case have gone beyond mere faulty
25 workmanship by the insured. Accordingly, the blistering and delamination occurring on the
26 courts as a result of the ASR condition in the concrete supplied by United Metro constitutes
27 "property damage" as defined under the plain terms of the policy.

28

1    Moreover, the blistering and delamination occurring on the courts as a result of the
2 ASR condition constitutes an "occurrence." The term "accident" is not defined in the policy
3 and Arizona courts have not addressed the term "occurrence" in the context of a commercial
4 general liability policy. However, other jurisdictions have explained that an accident, when
5 it is a source and cause of property damage, within the terms of a liability policy is an
6 "unexpected, unforeseen, or undesigned happening or consequence from either a known or
7 unknown cause." Geddes & Smith, Inc. v. Saint Paul-Mercury Indem. Co., 334 P.2d 881,
8 884 (Cal. 1959) (quoting Hauenstein v. Saint Paul-Mercury Indem. Co., 65 N.W.2d 122, 126
9 (Minn. 1954)). Additionally, the Alaska Supreme Court has determined that an "occurrence"
10 includes faulty workmanship performed by a subcontractor because the resulting damage is
11 "neither expected nor intended." Fejes v. Alaska Ins. Co., Inc., 984 P.2d 519, 523 (Ala.
12 1999). Therefore, the Court finds that the damage to the courts was the result of the
13 unexpected, unintended, and continuous exposure to the ASR condition in the concrete
14 constituting an "occurrence."

15    The Court, thus, concludes that there was "property damage" caused by an
16 "occurrence" pursuant to the policy. The Court now addresses whether any of the policy's
17 exclusionary provisions apply.

18 **B.    Policy Exclusion l – Damage to Your Work**

19    Exclusion l of the policy excludes coverage for: "'Property damage' to 'your work'
20 arising out of it or any part of it and included in the 'products-completed operations hazard.'"
21 Exclusion l contains an exception that states the following: "This exclusion does not apply
22 if the damaged work or the work out of which the damage arises was performed on your
23 behalf by a subcontractor."

24    "Your work" is defined by the policy as "[w]ork or operations performed by you or
25 on your behalf" and "[m]aterials, parts or equipment furnished in connection with such work
26 or operations." The "products-completed operations hazard" includes "all 'bodily injury' and
27 'property damage' occurring away from premises you own or rent and arising out of 'your
28 product' or 'your work'" unless the work has not yet been completed. Pursuant to the

- 6 -

1 definition, work is deemed completed "[w]hen all of the work called for in your contract has
2 been completed."  Further, "[w]ork that may need service, maintenance, correction, repair
3 or replacement, but which is otherwise complete, will be treated as completed."  It is
4 undisputed that damages alleged in the instant matter fall within the "products-completed
5 operations hazard."

6 Defendants contend that the Exclusion l applies to preclude coverage because the
7 damage claimed was to the insured's own work.  Defendants argue that the exception to the
8 exclusion does not apply in that United Metro was not a subcontractor, but simply acted as
9 a materialman.

10 Initially, the Court notes that the term "subcontractor" is not defined in the policy.  As
11 such, the issue is certainly less clear than it would have been had Defendants defined
12 "subcontractor."  In addition, unlike a pure material supplier, the product involved here was
13 custom-manufactured with an intended mixture of ingredients.  Accordingly, the Court finds
14 that this tends to remove such an entity from being classified as a materialman to one of a
15 subcontractor.  Therefore, since "the damaged work or the work out of which the damage
16 arises was performed" by a subcontractor, the exception to Exclusion l applies in this case.

17 The Court, having found that there was "property damage" caused by an "occurrence"
18 pursuant to the policy, and that none of policy's exclusionary provisions apply, will deny
19 Defendants' Motion for Summary Judgment and will grant Plaintiff's Cross-Motion for
20 Partial Summary Judgment.

21 ///
22 ///
23
24 **CONCLUSION**
25 For the reasons stated in the foregoing discussion,
26 **IT IS ORDERED** that Defendants' Motion for Summary Judgment (Doc. #33) is
27 **DENIED**;
28

1 **IT IS FURTHER ORDERED** that Plaintiff's Cross-Motion for Partial Summary Judgment (Doc. #38) is **GRANTED**.

DATED this 5th day of April, 2006.

_____
Roger G. Strand
Senior United States District Judge